THE HONORABLE RONALD B. LEIGHTON

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAIMLER TRUCK NORTH AMERICA LLC, f/k/a FREIGHTLINER LLC, a Delaware limited liability company,

                Plaintiff,

vs.

RAMIN YOUNESSI, an Illinois resident,

                Defendant,

vs.

CASCADIA INTERNATIONAL LLC,

                Interested Party.

Case No.: 08-MC-5011RBL

ORDER

This matter comes before the Court upon Responding Party Cascadia International LLC's Motion to Quash Subpoena (Duces Tecum) and for a Protective Order. [Dkt # 2] Having considered the written briefs of the parties, the Court FINDS and ORDERS as follows:

## I. Background

**A. Interested Parties**

Daimler Truck North America LLC (Daimler) is a foreign limited liability corporation. Daimler is the former employer of both Jim Hebe and Ramin Younessi. Daimler filed suit against Younessi in the Oregon district court, CV-08-0031-HA, on January 7, 2008, (the underlying case) claiming various tort

damages arising out of Younessi's departure from employment with Daimler. It is the third suit filed against Younessi by Daimler. [Dkt # 2, 5]

Ramin Younessi is an employee of International Truck and Engine Corp. (International) and defendant in the underlying case. Until March 12, 2007, Younessi was a "high level executive of Daimler." [Dkt # 7] He was hired by International after discussions with Jim Hebe and David Johanneson, Vice President of Sales & Distribution for International. Younessi is not a party to the motion before this Court.

Cascadia International LLC (Cascadia) is a limited liability corporation doing business operating truck dealerships for both International and Isuzu Trucks, two of Daimler's competitors. Daimler served Cascadia in Washington with discovery requests arising out of the underlying case against Younessi. Cascadia is challenging the validity of those subpoenas here, but Cascadia is not a party to the underlying case. [Dkt # 2]

Jim Hebe is Senior Vice President of North American Sales Operations for International. He is the former CEO of both Daimler and Cascadia. Hebe was forced to resign as CEO at Daimler in 2001. After a failed attempt to purchase a Daimler dealership, Hebe eventually purchased Cascadia. Hebe was Cascadia's CEO during the time relevant to this dispute. He allegedly negotiated the deal that brought Younessi to International from Daimler. [Dkt # 7] Hebe was previously served a subpoena similar to the one in dispute before this Court. That subpoena was quashed in part by the Oregon district court. [Dkt # 10, exhibits B & D]

**B. Procedure**

Daimler sued Younessi on January 7, 2008, in Oregon district court for breach of his duty of loyalty, his confidentiality contract, and his common law duty not to convert confidential and proprietary information. [Dkt # 7] As part of that suit, Daimler served Cascadia with the third-party discovery requests at issue before this Court. [Dkt # 2, exhibits B & C]; *see* Fed. R. Civ. P. 45(a)(2)(C). The parties have resolved most of their disagreements, but have been unable to resolve Daimler's request to search Cascadia's computers for communications between Hebe and Younessi and between Hebe and other Daimler employees. Cascadia moved in this court to quash the subpoena and for a protective order because Daimler's subpoena is both unduly burdensome and would require disclosing confidential trade secrets to a competitor. [Dkt # 2]; *see* Fed. R. Civ. P. 45(c)(2)(B) (subpoenas are challenged in the court of the district in which production is ordered).

## II. Discussion

Discovery is generally available regarding any nonprivileged information relevant to any party's claims or defenses. Fed. R. Civ. P. 26(b)(1). Discovery being broad in scope and biased toward disclosure, requests need only be "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

### A. Trade Secrets

If the parties have already conferred unsuccessfully in an attempt to resolve a dispute, the Court may grant a protective order on the responding party's showing of good cause by "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specific way." Fed. R. Civ. Pro. 26(c)(1)(G). The Court must balance Cascadia's interest in maintaining its trade secrets against Daimler's interest in prosecuting its claims against Younessi and defending itself against Younessi's claims. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).

Cascadia claims that production of its hard drives would necessarily reveal its trade secrets. Trade secrets have long been recognized as property. *Carpenter v. United States*, 484 U.S. 19, 26 (1987). Because of their fleeting nature, once trade secrets are disclosed to outside parties they lose their value and the property right is extinguished. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984). The Court recognizes Cascadia's interest in keeping its trade secrets out of the public eye, and particularly away from its competitors.[1]

Daimler asserts that its need for these documents arises directly out of Younessi's departure from Daimler's employment to International, a transition facilitated by communications with Hebe. [Dkt # 7] In an email already produced, two International employees discuss Younessi's pending employment and indicates that Hebe was involved in the company's communications with Younessi. [Dkt # 7, exhibit B] This communication, as well as the ongoing communication between Hebe and Younessi, occurred while Younessi was still an employee of Daimler. Given that Daimler's allegations arise directly out of behaviors of Younessi toward International in his negotiations and later employment with International, Daimler's request for any records of such communications are highly relevant. Even if International cannot reasonably produce the actual content of communications, Daimler could use records produced which

---

[1] In Oregon, discovery is being conducted under a Stipulated Protective Order. [Dkt # 6, exhibit A]

ORDER
Page - 3

indicate dates and times of communications for purposes of deposition and cross examination. Given the nature of Daimler's allegations, it is reasonable to assume that none of the witnesses to such communications will be forthcoming in testifying without some of the information sought through discovery to direct their questioning. This meets the "good cause" standard. Fed. R. Civ. P. 26(b)(1).

The Court is convinced that this need is strong enough to warrant discovery from Cascadia and the Motion to Quash is DENIED. However, some form of protective order is appropriate and the Court now turns to what form that production should take.

The Federal Rules provide for discovery of electronically stored information either in its original state, i.e. actual production and copying of hard drives, or in a reasonably usable form, i.e. print outs. Fed. R. Civ. P. 34(a)(1)(A). While this is consistent with the general scope of the Rules allowing broad discovery, it is inconsistent with the adversarial aspect of trial practice and discovery because it contemplates granting opposing counsel, and opposing parties, direct access to information beyond the scope of discovery. That is, the Rule allows for a subpoena of an entire hard drive for the limited purpose of finding a few documents which may be stored therein. *See* Fed. R. Civ. P. 34(a)(1)(A) (requesting party may obtain information stored in any medium); Fed. R. Civ. P. 34(b)(1)(C) (requesting party "may specify the form or forms in which electronically stored information is to be produced"). This would be analogous to allowing the search of a party's entire collection of file drawers for the purpose of finding a single class of documents.

In situations involving information which is appropriately kept private, the Court may fashion restrictions on the form and method of disclosure. *See Playboy Enterprises, Inc. v. Welles*, 60 F.Supp.2d 1050 (S.D. Cal. 1999). In the interest of protecting private information such as trade secrets or privileged documents, the Court can order the responding party's attorneys to search for all documents consistent with the subpoena and to produce only those which are relevant, responsive, and do not disclose trade secrets. *See*, *e.g.*, *id.* The Court finds in *Playboy* an appropriate model for this case. There, the plaintiff sought to copy the defendant's hard drives after it learned she may have deleted emails which could potentially prove the knowledge element of plaintiff's infringement claims. *Id.* at 1051. Defendant responded with concerns that privileged communications would also be recoverable under such a procedure. *Id.* at 1054. The court ordered the copying, but directed defense counsel to search the copy for responsive materials instead of turning over the copied drives themselves. *Id.* at 1055.

Here, Daimler also requests to copy Cascadia's hard drives, a process which might reveal not just privileged, but also trade secret information. Having Cascadia search its own computers is an appropriate compromise here because of the unique status of Daimler as a direct competitor and of Cascadia as a non-party to the underlying suit. The elaborate copying which took place in *Playboy* is not necessary because there are no allegations of documents being destroyed and Cascadia has shown that it is responsive and willing to cooperate with Daimler's reasonable requests.

The Rules and case law support this solution. *See In re Ford Motor Co.*, 345 F.3d 1315 (11th Cir. 2003); Comment to 1970 Amendment of Fed R. Civ. P. 34(a) ("[W]hen the data can as a practical matter be made usable by the discovering party only through respondent's devices, respondent may be required to use his devices to translate the data into usable form. In many instances, this means that respondent will have to supply a print-out of computer data."); Comment to 1993 Amendment to Fed. R. Civ. P. 34(a) (the rule "is not meant to create a routine right of direct access to a party's electronic information system"). Fortunately, Cascadia has demonstrated it is willing to cooperate with Daimler in seeking discovery and the Court has confidence that Cascadia's counsel will adequately and appropriately screen all discovered materials and remove only those documents which are beyond the scope of this order.

### B. Undue Burden

Discovery of electronically stored information can be limited if production is unreasonable due to its burden or cost. Fed. R. Civ. P. 26(b)(2)(B). The Court considers various factors when deciding if and how to limit discovery, including a less burdensome alternative source. *Id.*

Cascadia argues that Daimler's requests are overly broad because of Cascadia's wide-ranging collection of locations and computers.[1] Hebe was involved in a wide range of activities while heading Cascadia and had access to a variety of computers. Cascadia goes on to argue that the broad scope of Daimler's request further complicates production. *Id.*

In response, Daimler alleges acts, unclaimed in their Complaint, that Younessi may have undertaken with Hebe to "obtain confidential information" about Daimler. [Dkt # 7, at 7] Daimler alleges that it seeks

---

[1] According to Cascadia, its disparate locations in Tacoma and Yakima, Washington; Anchorage and Fairbanks, Alaska; and Nanaimo, British Columbia, Canada would complicate physical production of the hard drives themselves. Additionally, Cascadia currently owns approximately 89 computers spread between those five locations. As CEO, Hebe would have had access to many of these computers, and used a variety of computers during his employment. Since he has left Cascadia, During his employment at Cascadia, Hebe used any number of Cascadia's computers and have used them for confidential communications. Cascadia's Motion to Quash, at 5-6. [Dkt # 2]

ORDER
Page - 5

the information both to prosecute its tort claims against Younessi and to defend against his counter-claims. [Dkt # 7] Daimler offered to compromise by allowing Cascadia itself to "search and produce evidence of such contacts, if any, on Cascadia's hard drives, [B]lackberries, lap tops and calendars that Hebe used." [Dkt # 7, at 7]

When the Federal Rules were amended, the drafters were well aware that the scope of electronic discovery could be both broad and burdensome. GAP Report to the 2006 Amendment to Fed. R. Civ. P. 26(b)(2). "Information systems are designed to provide ready access to information used in regular and ongoing activities," however, and this makes large scale production of documents stored in this way much less burdensome than it otherwise would be. *Id.* The very nature of electronically stored information makes it easier to search, and "[i]n many circumstances the requesting party should obtain and evaluate the information from such sources before insisting that the responding party search and produce information contained on sources that are not reasonably accessible." *Id.*

The Court is aware that the parties have conferred to some extent to discuss this request and that Cascadia has voluntarily complied with the subpoena to some extent. That being said, neither party has briefed with the specificity required how burdensome further production might be or what likelihood there is that the resulting documents might be relevant.

The requesting party, Daimler, has the burden of showing a need for further discovery outweighs the burden placed on Cascadia in producing it, and not all of Daimler's requested documents meet that burden. *See* GAP Report to the 2006 Amendment to Fed. R. Civ. P. 26(b)(2) ("The requesting party has the burden of showing that its need for the discovery outweighs the burdens and costs of locating, retrieving, and producing the information."). Under the showing Daimler has made thus far, it would unduly burden Cascadia to produce information regarding contacts between Hebe and Daimler employees when no effective way has been presented to distinguish such contacts from the wide range of contacts any businessman undertakes. There is no evidence before this Court that Daimler has performed a search of its own records and documents for such contacts. If it has not, it would be unduly burdensome and potentially cumulative to require Cascadia to perform such a search in its records when Daimler, by failure to do such a search on its own, has implied that the costs of such a search outweigh the potential benefits. If Daimler has performed such a search and revealed no evidence to support the need for such a broad ranging search

then the likelihood of Cascadia's similar search being sufficiently beneficial to outweigh the costs is low. Without such a showing, Daimler has not met its burden of showing "good cause."

Pursuant to the Rules and the progress of discovery on this subpoena thus far, the Court ORDERS the parties to follow this procedure:

1. The subpoena, insofar as it requires Cascadia to produce its computers for copying, is hereby QUASHED.

2. Pursuant to Cascadia's trade secret and privilege concerns, Cascadia is directed to perform the search itself to determine what documents can be produced without violating those concerns. Cascadia should identify all potentially responsive sources that it has not searched and all potentially responsive documents that it has not produced, proving "enough detail to enable the requesting party to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information on the identified sources." *See* GAP Report to the 2006 Amendment to Fed. R. Civ. P. 26(b)(2). The party responding to discovery, Cascadia, has the burden of showing why the items identified are not produced. These disclosures, if any, should accompany any documents turned over to Daimler.

3. Production shall be limited to documents regarding communications on "hard drives, [B]lackberries, lap tops and calendars" [Dkt # 7] used by Jim Hebe between Hebe and Younessi or between Hebe and International regarding Younessi during the fourteen months laid out in the subpoena. These limitations are consistent with the documents the Oregon district court ordered Hebe to provide.[1]

---

[1] The entire text of that Order is as follows:
> ORDERED by Judge Ancer L. Haggerty. The Motion to Compel [80] filed by Daimler Trucks North America LLC seeking to compel Jim Hebe to produce documents and electronic records is DENIED. The court accepts as reasonable the offer by counsel for Hebe to produce redacted records reflecting calls or appointments or communications between Hebe and defendant, and between Hebe and other employees about defendant. He also agrees to produce documents relating to the discrimination counterclaim.

[Dkt # 10, exhibit D]

4. The subpoena, insofar as it requires Cascadia to produce documents regarding contacts between Jim Hebe and Daimer or Daimler employees, is hereby QUASHED.

IT IS SO ORDERED

Dated this 20th day of June, 2008.

*Ronald B. Leighton*

RONALD B. LEIGHTON

UNITED STATES DISTRICT JUDGE